## JACKSON v. UTAH RAPID TRANSIT CO.

No. 4975. Decided September 6, 1930. (290 P. 970.)

*A. W. Agee* and *De Vine, Howell, Stine & Gwilliam,* all of Ogden, for appellant.

*Joseph E. Evans,* of Ogden, for respondent.

STRAUP, J.

This action was brought to recover damages for alleged personal injuries resulting from a collision in Ogden City between the defendant's street car and an automobile owned and operated by the plaintiff's husband and in which the plaintiff was an occupant, as alleged by her a guest or invitee. The case was tried to a jury resulting in a verdict and judgment in favor of the plaintiff, from which the defendant appeals.

The negligence charged against the defendant was that it, at and toward a temporary crossing over its street car track, negligently ran one of its street cars without giving any warning signals of its approach, without keeping a reasonable or proper lookout in approaching the crossing, and in not having the street car under reasonable and proper control, by reason of which it was operated against and collided with the automobile while plaintiff's husband was driving over the crossing.

The answer denied the charged negligence, admitted that the plaintiff sustained "some injury," and alleged that "the plaintiff was riding in an automobile operated by her husband for the mutual benefit of both the plaintiff and her said husband, and that whatever injury the plaintiff sustained by reason of said collision was caused by her own negligence and by the negligence of her said husband, and without fault or negligence of the defendant." In no other manner or particular was it charged that either the plaintiff or her husband was negligent, or as to what either did or omitted to do which was claimed to be negligent.

Twenty-Sixth street is a public thoroughfare running east and west, and Washington avenue the main public thoroughfare running north and south, through the business district of Ogden. The defendant operated a street car line running north and south upon and along the center of Washington avenue. At the time of the accident and prior thereto, repairs were being made in the street at the intersection or

crossing of the two streets, which prevented the operation of street cars, automobiles, and other vehicles over the crossing. Street cars operated on Washington avenue from the south were operated to the crossing and there stopped as a terminal and then went back. So, as to cars operated on Washington avenue from the north. Operators of automobiles and other vehicles driving east and west along Twenty-Sixth street and approaching the crossing and desiring to continue on Twenty-Sixth street were required to drive about fifty feet south of the crossing and along Washington avenue and there cross the street car track where a sort of temporary crossing was provided, and then north on the other side of Washington avenue back to Twenty-Sixth street. In the afternoon of the day of the accident the plaintiff and her husband in a sedan automobile owned and driven by him went to a theater in the city. A sister of the plaintiff went with them. After the theater the sister, who lived in a different part of the city than did the plaintiff and her husband, was driven to her home. The plaintiff and her husband then proceeded toward their home. In doing so they drove east along Twenty-Sixth street west of the crossing of that street and Washington avenue. It was about 6 o'clock in the evening and in broad daylight. The husband was driving the automobile, which was a left-hand drive. The plaintiff was seated in the back seat. When the automobile came to the crossing it was driven south on the west side of Washington avenue with the intention of crossing the street car track at the temporary crossing about fifty feet south of the crossing where the repairs were being made, and then north on the east side of Washington avenue back to Twenty-Sixth street, and thence east on that street to the residence of the plaintiff and her husband. When the automobile from the west on Twenty-Sixth street approached the crossing, two street cars were standing on the track, one in front of the other, immediately south of the crossing where the repairs were being made, and as the automobile made the turn and was driven south on Washington

avenue toward the temporary crossing, one of the cars moved forward and was operated past the automobile and toward and over the temporary crossing and then continued on south. The other street car remained standing. The plaintiff and her husband testified that when the automobile approached the temporary crossing, and when about opposite it and about ten or fifteen feet west of it, the husband, the driver, gave a left-hand signal by extending his arm preparatory to making the turn to go over the temporary crossing, and as he did so, both the plaintiff and her husband looked to the north and saw the street car still standing about fifty feet away; that automobiles were parked at the curb along the east and west sides of Washington avenue and other automobiles operated along the avenue on both sides of it; that because of the condition of the temporary crossing and of the traffic, the automobile driven by the husband was operated over the crossing at a speed of only from five to six miles an hour; and that as the husband was attempting to drive over the crossing, the street car standing just south of the main crossing, without signals or warning, was put in motion and operated toward the temporary crossing and struck the hind part of the automobile as only the hind left side wheel of the automobile was on the last or east rail of the track. The rest of the automobile had passed over and was clear of the track. The plaintiff and her husband both testified that their hearing was good and that they heard no gong sounded or other signals or warnings given of the approach of the street car. As they testified, the first knowledge they had of its approach was when the plaintiff discovered it ten or fifteen feet away and exclaimed to her husband, "Oh Daddy, that car is going to strike us," and that the husband discovered the car too late to avoid the collision; that after they saw the street car standing as the husband gave the signal and turned and was about to drive over the crossing, their attention was somewhat diverted to the traffic and to automobiles approaching them to their right on the east side of Washington avenue;

and that they did not again look north along the track to see whether the street car was still standing or not, until the plaintiff discovered it ten or fifteen feet away.

Two witnesses who were passengers on the street car and called by the defendant testified that they were on the street car about five minutes before it started; that they talked with the operator who was both the motorman and the conductor; that the motorman before he started the car sounded the gong two or three times, looked out of the back and the sides of the car, closed the door, and started the car in motion; that at that time the automobile driven by plaintiff's husband just turned the corner as it entered Washington avenue from Twenty-Sixth street, passed the street car in motion, and without warning was driven immediately in front of it in attempting to pass over the temporary crossing, and was struck by the street car. Two other witnesses who were in an automobile driven along the east side of Washington avenue also were called by the defendant, who testified that the motorman before starting the street car sounded the gong two or three times, and that when the street car was in motion, the automobile driven by plaintiff's husband was driven along the side of the street car, and when about ten feet in advance of it, the automobile without warning was turned and driven in front of the street car, when the collision resulted. The motorman was not called as a witness by either party.

In plaintiff's case in chief, the husband, after having testified concerning the collision, seeing his wife bleeding from injuries produced by broken glass, taking her to a drug store about 100 feet away, and returning in about three or four minutes after the collision to the automobile and street car where the motorman still was, over objections of the defendant, was permitted to testify that immediately on his return and before the automobile had been moved after it was struck, he said to the motorman, "What the hell is the matter with you, feller, you didn't need to do that,"

and that the motorman said, "I didn't see you, I was looking at the back end of the car," and that in about a minute afterwards the motorman left and went to the drug store. Over objections of the defendant, the plaintiff was permitted to testify that a few minutes after she had been taken to the drug store, the motorman came in and asked her, "Are you hurt lady," and that she said, "I am hurt pretty bad," and that the motorman in reply said, "I am sorry, I didn't see you, I was looking at the rear end of the car"; and that the motorman then went over to a nearby telephone and talking with some one over it in substance said that he had met with an accident, ran into some one, didn't see it, and practically said the same thing he had told her. She testified that she did not know whether the motorman was talking to some one in the defendant's office or to some one at the police station. A policeman who was near by when the collision occurred and heard the crash and on going to the scene of the accident immediately after it occurred, over objections of the defendant, was permitted to testify that he asked the motorman how the accident happened, and that the motorman told him that when he started the motor of the street car he was looking out of the rear of the car instead of the front end; that he just glanced back of the car, looked at the back at the time he started up; and that he didn't see the party in the automobile passing in front of him.

The defendant requested the court to direct a verdict in favor of the defendant; and in the event such request was refused, the defendant requested the court to charge that if the plaintiff was guilty of negligence which proximately contributed to the collision she could not recover, and that in determining whether she was guilty of negligence the jury "should bear in mind that it was her duty and also the duty of her husband to look and listen for an approaching car before attempting to cross the railroad track and if by the use of ordinary care in looking and listening she could have discovered the movement of the car in time to have warned her husband and avoided the collision, she could

not recover." The defendant further requested the court to charge that if from the evidence the jury found that the plaintiff and her husband at the time of the injury "were engaged in a joint enterprise, that is were traveling for their mutual benefit or business, then, in law any negligence of her husband would be imputed to her, and would have the same effect as if she were personally negligent"; and that if the husband was guilty of any negligence which was the proximate cause of or proximately contributed to her injuries, the plaintiff could not recover. Such requests were refused. To the contrary the court in effect charged that there was not sufficient evidence to show negligence on the part of the plaintiff, and the defendant having the burden of proof to establish such negligence and having failed to do so, the court withheld such issue from the jury. The court also refused to submit to the jury the question of a joint enterprise of the plaintiff and her husband, and charged that the negligence of her husband, if any, in driving over the street car track, was not imputable to the plaintiff, and would not prevent her recovering, if by a preponderance of the evidence the jury found that the defendant was guilty of negligence in one or more of the particulars charged in the complaint and as elsewhere stated in the instructions, and if such negligence was the proximate cause of the injury, though the negligence of the husband, if any, may also have been a concurring cause.

The assignments of error chiefly relate to such ruling, and to the rulings receiving in evidence the declarations or statements of the motorman made three or four minutes after the collision. While in the defendant's brief the point is made that the husband was guilty of negligence, yet no claim therein is made that he and the plaintiff were engaged in a joint or common enterprise or undertaking, or that his neligence otherwise was imputable to the plaintiff. On the record we think her status was that of a guest or invitee without any showing that she controlled or exercised any control over the management or operation of

the automobile, or consented to or acquiesced in any mismanagement or negligent operation of it. *Cowan* v. *Salt Lake & Utah R. Co.*, 56 Utah 94, 189 P. 599, 604; *Haarstrich* v. *Oregon Short Line R. Co.*, 70 Utah 522, 262 P. 100. The point argued and presented in the brief in such particular is that the plaintiff, because she failed as it is claimed to properly and sufficiently look and listen for the approach of street cars and failed to discover the approaching car in time to warn her husband of its approach, was guilty of negligence as a matter of law, or at least guilty of such conduct in such particular as to require a submission of the question of her negligence to the jury as a matter of fact. In such respect it is urged by the defendant that it was just as much the duty of the plaintiff, though a guest or invitee in the automobile, as it was of her husband, the driver, to use reasonable care and caution to look and listen for approaching street cars and to discover and avoid danger; and knowing that she and her husband were approaching the crossing, the same duty and obligation rested upon her to look and listen for approaching street cars as though she herself had been driving the automobile. Cases are cited by the defendant which apparently maintain such doctrine. But we think it was repudiated in the cases of *Cowan* v. *Salt Lake & Utah R. Co.*, supra; *Lochhead* v. *Jensen*, 42 Utah 99, 129 P. 347; *Atwood* v. *Utah Light & R. Co.*, 44 Utah 366, 140 P. 137; *Martindale* v. *Oregon Short Line R. Co.*, 48 Utah 464, 160 P. 275; *Montague* v. *Salt Lake & Utah R. Co.*, 52 Utah 368, 174 P. 871; *Haarstrich* v. *Oregon Short Line R. Co.*, supra.

Such cases show that a guest or invitee in an automobile, having no control or direction of the management of it, is not held to the care required of the operator, and has the right to rely on the prudence, care, and skillfulness of the operator, in the absence of facts indicating an absence of such qualities. The subject also is considered in 2 Blashfield, Ency. of Auto. Law Ann. chaps. 51 and 52, where views of courts, though somewhat in conflict, are

noted. The proposition generally is there also maintained that ordinarily a guest, especially if sitting in the rear seat of the automobile and having no control and exercising none over it, may rely on the prudence and capacity of his host as a competent driver, unless the absence of such qualities appear, and if he neither consents nor acquiesces in the particular mismanagement of the automobile causing or contributing to an accident, he is not deemed or considered negligent. The rule is stated by this and by other courts that a guest or invitee is required to use the same care for his own safety that a reasonable and prudent person would use under similar circumstances. If he sees or discovers a danger in time to warn the operator of the automobile, or if the danger is so obvious, or if he is in such a position, that he must have seen it by the use of his sense of sight in a manner reasonably to be expected of a guest or invitee situated under similar circumstances, and an accident happens because of his failure under such conditions to warn the operator of such danger, he may be deemed guilty of negligence. So, if in approaching crossings or a street car track, the guest or invitee discovers an approaching street car or other danger which apparently is not seen or discovered by the operator, due care on the part of the guest or invitee requires him to warn the operator, and his failure to do so may be regarded as negligence. But in law, or as a matter of law, there is no active or constant duty or vigilance imposed on a guest or invitee, in approaching street car tracks or street crossings, to look and listen for approaching street cars, or to discover road conditions, or other dangers, to avoid accidents. If the guest or invitee knows that the driver is incompetent or careless, or unaware of an approaching danger, or is not taking proper precautions to avoid it, it again becomes the duty of the guest or invitee to caution or notify the operator. So, too, if the guest or invitee sees or knows that the operator is operating the automobile at an excessive, unlawful, or dangerous speed, or in violation of traffic rules or regulations, or otherwise is mismanaging or

driving the autotmobile in a careless manner, it again is the duty of the invitee or guest to protest and ask the operator to desist; and if the guest or invitee fails to do so, he may be regarded as having consented to or acquiesced in such violations or negligence of the operator, rendering the guest or invitee himself personally guilty of negligence.

By its request to charge, and of which complaint is made because the court did not give it, the defendant requested the court to charge that, as a matter of law, it was not only the duty of the husband, but equally that of the plaintiff, to look and listen for approaching cars, before ■ the husband attempted to cross the street car track and to listen and keep a vigilant lookout for the approach of cars, and if she failed to do so, she could not recover. As an abstract proposition the request even as to the driver of an automobile is not a correct statement of the law. There is an absolute rule of law that one driving along a public street or highway must look and listen for approaching trains or cars before attempting to go on or drive over a steam railroad track, but no such rule, as a matter of law, is required before going on or attempting to cross a street railroad track. We have held that several times. *Oswald* v. *Utah Light & R. Co.*, 39 Utah 245, 117 P. 46; *Gibson* v. *Utah Light & Traction Co.*, 46 Utah 562, 151 P. 76; *Spiking* v. *Consolidated Ry. & P. Co.*, 33 Utah 313, 93 P. 838. Such, too, is the general rule. 36 Cyc. 1554; *Evansville Street R. Co.* v. *Gentry*, 147 Ind. 408, 44 N. E. 311, 37 L. R. A. 378, 61 Am. St. Rep. 421; *Citizens' Street Ry. Co.* v. *Abright*, 14 Ind. App. 433 N. E. 238, 1028; *Bass' Administrator* v. *Norfolk Ry. & Light Co.*, 100 Va. 1, 40 S. E. 100; *Marshall Traction Co.* v. *Dunn* (Tex. Civ. App.) 238 S. W. 692; *Union Traction Co.* v. *Moneyhun*, 192 Ind. 288, 136 N. E. 18, 28 A. L. R. 211. Mr. Justice Henshaw in the case of *Clark* v. *Bennett*, 123 Cal. 275, 55 P. 908, 910, well said that: "The distinction between the two kinds of public vehicles is too broad, the differences between their characters too substantial, to justify their obliteration, and to impose upon the citizen occupying a

■

highway, where his right is the same as that of the street-car company, a duty identical with that which is his when he attempts to cross the right of way of a steam-railroad company." Such and many other cases teach that the principle of law is well established that it is not negligence in law, or as a matter of law, for a person driving a vehicle in approaching a street crossing over which he intends to cross, or drive upon or across a street railroad track, without looking or listening for an approaching street car in order to avoid danger from it.

For more cogent reasons was the request erroneous as applied to the plaintiff who was a mere guest or invitee. In the case of *Cowan* v. *Salt Lake & Utah R. Co.*, supra, where it also was contended that in approaching a crossing of an interurban electric railway the same duty was imposed on the guest or invitee as on the driver of the automobile to look and listen for approaching cars and to observe the same vigilance in that respect as that of the driver, this court, in holding against the contention, among other things, said that: "to our minds the rule contended for by counsel would necessarily result in holding that the wife and child in the rear seat of a modern automobile may not relax their care and vigilance and trust to that of the husband and father, who is driving the machine, or that the invited guest who is in the rear seat with the wife may not do so. We are not prepared to adopt such a doctrine, but prefer to follow the more reasonable, and, as we conceive, the more humane doctrine laid down," in the cases there cited and referred to.

But the defendant further urges that though its request was properly refused, the defendant nevertheless was entitled to go to the jury on the question of plaintiff's negligence as a matter of fact, and that the court erred in withholding such issue from the jury. A consideration of such ruling involves the question of whether there was sufficient evidence to warrant or justify a finding or verdict of negligence on her part which directly or proximately contributed to the collision and to her injury.

Admittedly the plaintiff was a guest or invitee without any control or direction of the management or handling of the automobile and exercised no control over it. Not anything is made to appear that the husband driving the automobile was not a competent and an experienced and careful driver. As has been seen, there was no rule of law requiring the plaintiff to look or listen for approaching street cars before her husband attempted to drive over the street car track, that she in such respect was not held to care required of the operator of the automobile, that she had the right to rely on the prudence, care, and skillfulness of the operator, and that her duties were not active and vigilant as were those of the operator to discover dangers, but was required to notify and warn the driver of dangers seen or discovered by her or which were so apparent or obvious as to presume knowledge of them by her, and which apparently were not seen or discovered by him.

In view of such considerations, what on the record is there which would have justified a finding by the jury that the plaintiff was guilty of negligence, or what was done by her which an ordinarily prudent person situated as she was would not have done, or what did she fail to do which an ordinarily prudent person would have done? The only claim made by the defendant in such particular is that under the law she was in duty bound to look and listen for approaching street cars before her husband attempted to drive and while he was driving over the track, and that she did not sufficiently or with reasonable care perform that duty which, as claimed, had it been properly performed, she would have discovered the approach of the street car in time to have warned her husband and avoided the collision. Looking first at the testimony of the plaintiff and of her husband, it appears, and as they testified, that both of them looked up the track when the husband gave the signal for a left-hand turn and as he was turning and about to cross the street car track, and that both saw the street car about fifty feet away still standing and in the same

position they saw it when they entered Washington avenue. Now, it is the contention of the defendant that though the testimony of the respondent and of her husband be true which counsel for the defendant argue is untrue, still the plaintiff had no right to assume that the street car would remain standing and would not be put in motion while her husband was crossing or attempting to cross the street car track, and hence she was required to maintain a constant and vigilant lookout to discover the street car when it started up, and that if she had exercised such care she would have discovered it in time to have warned her husband and avoided the collision. As is readily seen, the contention is predicated on the theory that, as a matter of law, such a duty or vigilance was imposed on the plaintiff, a mere guest or invitee, and had the issue of her negligence been submitted to the jury and had it found that she had not with reasonable care or diligence performed such duty and found her guilty of negligence, such a finding of necessity would rest on a wrong principle of law, for no such claimed duty was imposed on her. On the other hand had the question of plaintiff's negligence been submitted to the jury, and the jury on the defendant's evidence had taken the view that the cause of the collision was as testified to by the defendant's witnesses, that the husband of the plaintiff driving along the side of the moving street car and when about ten feet in advance of it without warning undertook to drive across the track in front of the street car, the jury would not have been justified in finding the plaintiff guilty of negligence, for the reason that from the defendant's evidence there is not anything to show that she had any control over the operation of the automobile or exercised any control over it, and not anything to show that she had any knowledge in time to caution him before he attempted to drive over the crossing, or to afford her an opportunity to object or protest to such conduct, nor is there anything to show that she in any way consented thereto or acquiesced therein. To have warned or notified her husband of the

presence of the moving street car as he drove along it and passed it would not have added anything to his knowledge of the presence of the street car; and unless she knew that her husband, under the circumstances as testified to by the defendant's witnesses, intended to cross the track when the moving street car was only about ten feet away, in time to have objected thereto and to prevent such an undertaking, we do not see on what theory the plaintiff could be held guilty of negligence unless the negligence of the husband is to be imputed to her, which, as has been seen, may not be done. Though a guest or invitee in an automobile may be asleep before or at the time of an accident, yet that does not necessarily render him guilty of negligence. 2 Blashfield, Ency. of Auto. Law 1089. We are told, though we have seen no adjudicated case to the effect, that some husbands get along better driving an automobile when their wives are asleep in the back seat, than when they are awake watching and warning the driver and undertaking to direct the management and operation of the automobile. At any rate, it is believed to be of more importance that the driver stays awake rather than the guest or invitee.

We are of the opinion that the theory upon which the defendant claimed the case ought to have been submitted to the jury as to plaintiff's negligence, that there was a vigilant duty imposed upon her to look and listen for approaching street cars and that negligence of her husband was imputable to her, is not well founded, and hence the court did not err in withholding the question of her negligence from the jury. *Lochhead* v. *Jensen,* supra.

It is urged that the statements or declarations made by the motorman to the husband, to the plaintiff, and to the policeman, were improperly received in evidence. Such testimony was received under the res gestae rule. The defendant contends the testimony was not within the rule because, as claimed, the statements of the motorman were not sufficiently coincident with the main transaction and were not spontaneous, and in character were mere

narratives of a past transaction. In the case of *Cromeenes* v. *R. R. Co.*, 37 Utah 499, 109 P. 10, Ann. Cas. 1912C, 307, the general limitations of the res gestae rule, so far as here necessary, are stated to be that the declaration or utterance must be spontaneous or instinctive; that it must relate to or be connected with the main or principal event or transaction itself material and admissible in evidence; and that it must have been the result or product, the outgrowth, of the immediate and present influences of the main event, or preceding circumstances to which it relates, and must be contemporaneous with it and tend to explain or elucidate it. It there is further stated that the word "contemporaneous" is not taken literally, and that time is not the real governing factor in the determination, but is an important element in determining whether the statement was spontaneous and immediately connected with the main transaction and prompted or produced by its immediate and present influences. And as stated in 11 Ency. of Evidence, 306, that the declaration to be a part of the res gestae need not necessarily be coincident with the main transaction, and that it is sufficient if the two are so nearly connected that the declaration can be said to be a spontaneous expression prompted by and related to the main event. At subsequent pages the author further states that while as a general rule mere narrative statements of a past transaction are not admissible as a part of the res gestae on the theory that such statements ordinarily are not regarded as being spontaneous, still, a statement, though narrative in form, may be so clearly connected with the main event as to be a part of and prompted and induced by it, may be so regarded and be admissible; and that the important consideration is not so much the form of the words but the circumstances under which they were uttered. In the case of *Leach* v. *Oregon Short Line R. Co.*, 29 Utah 285, 81 P. 90, 110 Am. St. Rep. 708, this court approvingly quoting from 24 A. & E. Ency. of Law 665, in substance stated that the principle upon which the admission of such evidence rests is that the declarations may

be made so soon after the happening of the principal fact, and be so intimately interwoven therewith by the surrounding circumstances, as to raise a reasonable presumption that they are the spontaneous utterance of thoughts created by and springing out of the transaction itself, and to exclude the presumption that they are the result of premeditation or design. In the case of *Wilson* v. *Southern Pacific Co.*, 13 Utah 352, 44 P. 1040, 1041, 57 Am. St. Rep. 766, the plaintiff who was injured at a crossing, within three minutes after the collision, walked over to a switchman near by and addressing him asked, "Who is to blame for this?" The switchman replied, "It was the engineer." The contentions there made against receiving the statements in evidence were that they were a mere subsequent narrative of the event and the expressions of an opinion; but this court held they were "the immediate expressions  *  *  *  brought into play by the occurrences of the occasion" with which they were connected and were properly received as a part of the res gestae. Many cases are cited and considered in the prevailing opinion in the Cromeenes Case and in the Leach Case which we think here applicable.

In view of such considerations we think the statements or declarations made by the motorman to the husband, to the plaintiff, and to the policeman were properly received in evidence. They were made so nearly coincident with the collision—within three or four minutes thereaf- ■ ter—and so closely connected with and related to it and tended to explain or elucidate it, and made under such circumstances as to preclude premeditation or design in the making of them, and sufficiently shown to have been the result of the immediate and present influences of the transaction or preceding circumstances to which they related as to render them admissible in evidence. The statements were in no sense self serving. While declarations made for or against one party or the other to a cause is not itself a determining factor of their admissibility and to be admissible it is not essential that the declarations be disserving if they otherwise

have the requisites rendering them admissible under the rule, still, declarations which are disserving, as here they were, are more likely to be instinctive and spontaneous and not the result of premeditation or design, than declarations which, if made under other circumstances, may be self-serving. As stated in the Cromeenes Case, the basis of the rule is not admissions against interest, but trustworthiness of the statements, provable, not as the testimony of the declarant, but as a part of the transaction itself, like any other material fact or evidentiary detail.

The admission in evidence as to what the motorman stated while talking over the telephone stands on a somewhat different footing. As to the question of time there was no substantial difference as to that statement and the other statements, but the character of the statement and the circumstances under which it was made were materially different. The statement over the telephone was more in the nature of making a report, the witness who testified concerning the making of it not knowing whether the statement was made to some one in the defendant's office or to some one at the police station; but in either case the motorman was merely reporting or giving notice of an accident. Such a report or statement in the very nature of things is not instinctive or spontaneous though made within four minutes or thereabouts after the accident. What prompted or induced the statements made to the husband and the plaintiff was wholly different from that which prompted or induced the statement over the telephone. We thus think the statement made by the motorman over the telephone was improperly received. Since, however, the record shows that what was said over the telephone by the motorman was substantially what he stated to the plaintiff, and nothing more, we think no prejudice resulted in the ruling.

Complaint also is made because the court refused to permit the defendant to prove that one of its witnesses riding in an automobile with her husband and approaching the cross-

ing where the collision occurred and witnessing the accident, and seeing, as she testified, that the auto- mobile struck by the street car was about to be driven in front of the moving street car, then remarked or stated to her husband that "she wondered if they (the persons in the automobile struck by the street car) were going to attempt to cross in front of the street car." Evidence of the statement was not to be rejected because the state- ment was made by a bystander witnessing the acci- dent, for, if the statement otherwise possessed the requi- sites of its admissibility, it was not to be rejected upon the ground that it was made by a bystander. *Cromeenes* v. *Oregon Short Line R. Co.*, supra. So far as offered to be proven, the statement was a mere "remark" made by the declarant to her husband expressing a feeling of surprise or criticism, she "wondered" whether the person driving the automobile would do such a foolish thing as to attempt to drive in front of a moving street car, as it appeared to her the driver was attempting to do. Further, and as stated by the author in 2 Ency. of Evidence, 321, that owing to the nature of the evidence and the principles governing its admission, no rule can be devised and no hard and fast rule laid down, which will always determine in a particular case what is res gestae; that some declarations are clearly ad- missible and others as clearly not res gestae, but between such extremes is a field in which the trial court is required to exercise a sound judicial discretion in aplying the gen- eral principles and in receiving in evidence or rejecting the declaration or statement. We think the remark or statement offered to be proven was of such character that the court in the exercise of a sound judicial discretion was justified in rejecting it. Though it be assumed the court erred in such respect, yet no prejudice resulted to the defendant for the reason that the declarant herself was called as a witness by the defendant, and who testified to the same facts claimed to have been declared by her, that the driver of the automobile without warning attempted to drive in front

of the moving street car when it was only about ten feet away.

A further point is made that the evidence was insufficient to sustain the charged negligence that the street car approached the temporary crossing without giving signals or warning, and that by the evidence adduced by the defendant it was affirmatively shown that the gong of the street car was sounded several times before the street car was put in motion. Because the testimony given by the plaintiff and her husband on the subject was negative in character, and that adduced by the defendant positive, it is not claimed that the former was rendered ineffectual by the latter. What is claimed is that the testimony of the plaintiff and of her husband did not sufficiently show that they were listening for signals, and hence their testimony that they heard none was insufficient to show that no signals were given, and for such reason the court erred in submitting to the jury the issue with respect to such charged negligence of the defendant. No request was made by the defendant to withhold such issue from the jury. A motion was made for a nonsuit; but that was based entirely on the ground of negligence of the husband and of the plaintiff, and not on the ground of insufficiency of evidence to show any of the charged negligence of the defendant. The defendant also asked a request to charge that "under the law and the evidence in this case the plaintiff is not entitled to recover any damages from the defendant," and that the jury thus be directed to render a verdict for the defendant. That is all that was there indicated on the subject of insufficiency of the evidence. Nothing was specified or pointed out, and not anything indicated to show whether the blanket request was based on the ground of negligence of the husband or of the plaintiff or of both, or on the want of sufficient evidence to show negligence of the defendant. If it was the claim of the defendant that there was sufficient evidence to let the case to the jury on one or more of the charged negligence of the defendant,

but not on one or more other charged negligence, as in effect is argued in its brief, the defendant somewhere in the proceedings in the court below was required to present the matter to the court and invoke a ruling on it. That the defendant did not do. It took an exception to portions of this paragraph of the charge:

"Under the evidence in this case it is immaterial so far as this plaintiff is concerned if the driver of the automobile, Lorenzo Jackson, was negligent in driving across said tracks at said time and place. His negligence cannot prevent plaintiff recovering from the defendant, if plaintiff proves to you by a preponderance of the evidence, that defendant was negligent in any one or more of the particulars set out in instruction numbered two, and said negligence was a proximate cause of her injury. That Lorenzo Jackson's negligence may have also been a concurring proximate cause of her injury is not a defense to the cause of action."

The defendant took an exception to the portion wherein the court stated that it was immaterial if the driver of the automobile was negligent, and to the language that "his negligence cannot prevent plaintiff recovering from the defendant, if plaintiff proves to you by a preponderance of the evidence that the defendant was negligent in one or more of the particulars," elsewhere set out in the instructions. It is the contention of the defendant that by such an exception, an exception was taken to the court submitting to the jury the particular charged negligence of the defendant in failing to give signals or warnings of the approach of the street car. Manifestly nothing of that kind was pointed out or indicated by the exception, and apparently what was indicated thereby was an exception to the charge that the negligence of the husband was immaterial and would not prevent the plaintiff from recovering if she otherwise was entitled to recover. By paragraphs 1 and 2 of the charge the court charged on and submitted to the jury all of the charged negligence of the defendant, including the alleged negligence that it operated the street car without giving adequate, timely, or any warning signals, and no exception was taken thereto. We thus are of the opinion that the

defendant is not in a position to review the ruling of the court submitting to the jury the charged negligence of the defendant in operating the street car toward the temporary crossing without giving warning signals.

But let the matter be further considered. In the case of *Clark* v. *Union Pacific R. Co.*, 257 P. 1050, we had occasion to consider the question of negative and positive testimony with respect to the giving of signals of approaching trains or cars at a crossing. We there, among other things, in effect held that though a witness was not especially listening for signals or giving special attention to the occurrence of whether signals were or were not given, yet,' if his attention was not engrossed by or diverted to other things, and if he was in position to hear and in all likelihood would have heard signals had they been given, his testimony that he heard none is nevertheless of probative value and is not to be disregarded, though its weight may not be considered as great as testimony of witnesses who testify that they were listening for signals and heard none, or those who testify that signals were given. Here the position of the husband and of the plaintiff who testified that there hearing was good and that they heard no signals or warnings given of the aproach of the street car was unlike that of a witness who, being a considerable distance away engrossed in work and paying no attention to the occurrence of whether signals were or were not given, and who merely testifies that he heard no signals. The husband and the plaintiff, according to their testimony were not inattentive but were attentive. Before turning to cross the street railroad track, they, as they testified, both looked up the track and saw the street car still standing only about fifty feet away. That they were in a position to hear, and that the trier of the facts may say they in all likelihood would have heard, signals of the sounding of the gong of the street car had such signals been given, is, as we think, sufficiently shown. That their attention was momentarily diverted to the traffic as the husband was driving over the

track, yet, for such reason it is not conclusively shown that the signals would not have been heard by the plaintiff and her husband had they been given. While such may be a matter proper for the consideration of the jury, yet, was not of such a conclusive character as to justify the court in holding that the testimony, though negative in character, was of no probative value, or was rendered ineffectual by the positive testimony of the defendant's witnesses. We think the court was justified in submitting to the jury the issue complained of.

The judgment of the court is therefore affirmed, with costs to the respondent.

CHERRY, C. J., ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.