## BALLE v. SMITH.

No. 5186. Decided December 15, 1932. (17 P. [2d] 224.)

181

184

*Ralph T. Stewart,* of Salt Lake City, and *W. H. Reeder, Jr.,* of Ogden, for appellant.

*David J. Wilson,* of Ogden, and *Willard Hanson,* of Salt Lake City, for respondent.

FOLLAND, J.

Plaintiff, a minor, brought this action to recover damages for injuries received by her in an automobile collision alleged to have been caused by the negligence of the defendant. The collision occurred in Ogden Canyon after dark at about 9 o'clock p. m. of October 23, 1929. The headlights on both cars were lighted. Plaintiff, aged 14, another girl of the same age, and three boys (brothers) aged 19, 17, and 16, respectively, were riding down the canyon in the single seat of a 1923, model T Ford coupe. The oldest boy, Thoros Pass, was driving the coupe, and the other boys were sitting on the seat and the girls were sitting on the laps of the boys other than the driver. Defendant, with his wife, daughter, and another lady, was driving up the canyon in a Star sedan. When the impact occurred, the rear end of the Ford coupe swung to the right and tipped over, falling on plaintiff. Plaintiff was rendered unconscious and suffered a compound comminuted fracture of the femur of the right leg. The occupants of each car testified that the car in which they were riding kept on the right-hand side of the center line of the road, and that the other car crossed such line causing the accident by being on the wrong side of the center line.

The negligence charged in the complaint was that defendant drove and operated his automobile at a great and unusual and unnnecessary rate of speed, and at a rate of speed

that was likely to and did endanger life and property, and without due regard to the width and condition of the highway and character of the traffic thereon, and at a rate of speed in excess of thirty miles per hour, and carelessly and negligently failed to keep any proper or other lookout for vehicles along or upon the highway, and failed and omitted to keep on the right-hand side of the center of the highway, and carelessly and negligently operated his automobile over, across, and to the left-hand side of the center of the highway, thus causing the collision. Defendant answered, denying the allegations of negligence, and alleging that the accident was caused by the negligence of the driver of the Ford coupe, in this: That he operated the car without proper headlights at an excessive rate of speed; that he did not keep his car on the right-hand side of the center of the highway, and that he permitted and allowed too many persons to occupy the car, so that his handling and operation of it was interfered with and obstructed; and that he neglected to keep a proper lookout to avoid collision with others, and failed, after seeing defendant's car, to operate his car so as to avoid the collision; that all these facts and conditions were well known to plaintiff, or that she with reasonable care and diligence ought to have known them, and that she failed to remonstrate or protest against them and failed to exercise reasonable care to prevent accident or injury to herself; that she voluntarily assumed the risk of such conditions and negligent acts of the driver; and that the injuries complained of were caused solely by the negligence of the driver of the car in which plaintiff was riding and by the negligence of plaintiff herself.

The cause was tried to the court with a jury. A general demurrer to the complaint was overruled. Defendant's motion for a nonsuit and motion for a directed verdict were denied. The jury rendered a verdict in favor of plaintiff for $4,655, and judgment was entered accordingly. A motion for a new trial was made and overruled. From the judgment and order overruling the motion for a new trial,

defendant appeals. Thirty-five alleged errors are assigned and relied on.

The first proposition presented is the alleged error of the trial court in failing and refusing to grant defendant's motion that the jury venire be discharged, and that the case be declared a mistrial on the ground of alleged misconduct by one of counsel for plaintiff in asking Mr. Bock, the first juror examined by him on voir dire examination, a question relative to Intermountain Lloyds, an insurance company, and in making comment and argument with reference thereto within the hearing of the jury. The record made on this subject is as follows:

"Q. (by Mr. Hanson, counsel for plaintiff). Are you acquainted in any way with what is known as Intermountain Lloyds Company?

"Mr. Stewart (counsel for defendant): At this time we take exception to the reference made by counsel and assign it as misconduct, and we ask the court at this time to discharge the jury and call a new venire.

"Court: I will sustain the objection. I think there should be no reference made to that company, and I will admonish you, ladies and gentlemen of the jury, to disregard the reference made to the company just referred to.

"Mr. Hanson: I am going to make a record of this, and I have the authorities on it; I am going to dictate it into the record now.

"Mr. Stewart: Just a moment. If your honor please, we will ask that the jury be excused.

"Court: The company is not a defendant in any sense.

"Mr. Hanson: I know it is not, but it is the party in interest. That is the test, your honor.

"Mr. Stewart: We will ask that the jury be excused during any discussion on this matter."

The jurors were then excused and retired to the hall. In the absence of the jury, Mr. Stewart, one of counsel for defendant, was called to the witness stand, and in response to question by plaintiff's counsel testified that he had been employed by Intermountain Lloyds to defend the case, and, while he did not know of his own knowledge, he assumed that the company carried insurance on Mr. Smith's car. The defendant was examined, and testified over objection

that his liability was insured up to $5,000 by Intermountain Lloyds, and that the insurance company furnished his attorneys and were defending the case. Before the jurors were called back into the courtroom W. H. Reeder, one of the attorneys for the defendant, testified that he was in the hall during the discussion before the court and heard a part of it, and that the jurors were there, and, if their hearing was as good as his, they could have heard Mr. Hanson's argument. R. E. Smith, the defendant, testified that he also was in the hall during a part of the argument, and that he heard Mr. Hanson say "he was going to ask each juror about or if he was connected with Intermountain Lloyds," and that the jurors were all standing in the hall outside the door at the time. Whereupon the following record was made:

"Mr. Stewart: Now we renew our request that this case be declared mistrial and that the venire be discharged, on the ground that the matter referred to and presented by counsel in court while jurors were in the court room was when one juror was being examined, and also because of the fact that the matters discussed in the court afterwards must necessarily have been heard by jurors while they were waiting in the hall.

"Court: I will admonish the jurors with respect to that matter. I don't think any prejudice has resulted or will result. You may call the jury.

"Mr. Stewart: May I have an exception to the ruling of the court in not discharging the jury?

"Court: Yes, Now you may proceed Mr. Hanson."

To what extent, if at all, counsel for plaintiff may examine a juror with reference to his connection either as stockholder, officer, or employee, or debtor or creditor in an insurance company, which is defending a case pursuant to a contract of insurance with the defendant, is a question of first impression in this court. It is a subject which has aroused considerable controversy in the courts of this country in recent years, and on which there is a great contrariety of decisions. There are two decisions of this court which refer to a related subject but do not directly bear on

the question. *Beaman* v. *Martha Washington Mining Co.*, 23 Utah 139, 63 P. 631; *Andrews* v. *Free,* 45 Utah 505, 146 P. 555, 558. In *Beaman* v. *Martha Washington Mining Co.*, supra, it was held that the asking of a question by plaintiff's attorney of defendant's attorney whether he did not represent an insurance company in the case where no effort was made by the defense to cure the vice is not such an abuse of the privilege of counsel as to require a new trial. In *Andrews* v. *Free,* supra, counsel for plaintiff stated in his argument to the jury that it would not mean 5 cents difference to defendants whether judgment went for or against them. The court held that, in the absence of a request for action by the court to strike, to require retraction, or to warn the jury, the question was not reviewable, as the remark was not so flagrantly improper or harmful "that no ruling could have cured the harm." In neither of these cases was the subject-matter of insurance referred to for the purpose of determining the qualifications of jurors.

The universal rule is that it is irrelevant to the issue of negligence whether the defendant is carrying liability insurance or not, and, subject to some qualifications which need not be here mentioned, such testimony is wholly inadmissible. Courts have guarded jealously against the introduction of such evidence before the jury, not only because it is irrelevant to the issue, but because jurors are commonly thought to be prejudiced against insurance companies, and, if the fact were known that the defendant is insured, jurors would be less inclined to consider the case on the merits, and more inclined to render a verdict for plaintiff and in a larger amount than if the defendant, especially where the defendant is an individual, had to bear the loss alone. We do not say this suspicion is well founded, but merely that such prejudice is widely believed to exist. For the same reasons arguments and statements of counsel directly stating, or from which it may be inferred, that the defendant is insured, are forbidden. In many cases the courts declare a mistrial, or on appeal a reversal, where

counsel have abused their privilege by improperly forcing the fact that defendant is protected by indemnity insurance to the attention of the jury. We need not cite the cases, as they are very numerous and will be found in the excellent annotations in 56 A. L. R. 1418, and 74 A. L. R. 849. In the instant case the trial court sustained the objection to the question put to a juror: "Are you acquainted in any way with what is known as Intermountain Lloyds?" and no answer was given. The court refused to permit counsel for plaintiff to interrogate the jurors or any of them with respect to Intermountain Lloyds, and admonished the jurors to disregard the reference made to the company named. Counsel for plaintiff insisted that he had a right to pursue that line of questioning, and stated he would confine himself strictly to determining if any juror was interested as a stockholder or officer or employee, debtor or creditor of Intermountain Lloyds. The court refused him the right to ask such question or to permit him to further refer to the subject in the presence of the jury. To such rulings the plaintiff excepted. The plaintiff, however, is not the appellant, and no cross-appeal was taken or cross-assignments of error filed, so that the particular ruling of the court in refusing counsel permission to ask the question is not directly involved on this appeal. The question is indirectly involved, however, and calls for an expression from us because appellant has assigned as error the refusal of the court to direct a mistrial and discharge of the venire because of the question put to one of the jurors, the statement made by counsel that the insurance company was the party in interest, and the possible hearing by the jurors, when in the hall, of counsel's argument and statement that he intended to ask each juror if he was connected with or interested in Intermountain Lloyds. The courts of a majority of the states and some federal jurisdictions and by the greater number of decisions hold that plaintiff in a personal injury or death case, if acting in good faith for the purpose of ascertaining the qualifications of jurors, and

not merely for the purpose of informing them that defendant is insured, may in one form or another inquire of prospective jurors on voir dire examination with reference to their interest in or connection with insurance companies. 56 A. L. R. 1454; 74 A. L. R. 860; L. R. A. 1915A, 153; 35 C. J. 394. Some courts permit the inquiry to extend to a reference to a named insurance company, particularly where it is a local corporation or mutual company. *Martin* v. *Schiska*, 183 Minn. 256, 236 N. W. 312; *Burrows* v. *Likes*, 180 Mo. App. 447, 166 S. W. 643, and cases cited in 74 A. L. R. 866. These questions are permitted on the theory that plaintiff is entitled to know the relationship, if any, between any juror and a party in interest, although such party does not appear of record, and to use the information thus obtained as a guide in the exercise of his challenges to any of the jurors. A litigant is entitled to a trial before an impartial and disinterested jury, and he must be given reasonable oportunity to obtain such panel. He should be given reasonable latitude in ascertaining what the relations and affiliations of the jurors are with an interested party. This, however, must be accomplished as far as possible without prejudicing the jurors against the adverse party. The right to so interrogate the jurors is challenged on the ground that such a line of questioning necessarily leads the jurors to believe that an insurance company is back of the defendant and will have to pay the judgment, if any, and is therefore prejudicial to the right of the defendant to have the case tried solely on the question of his liability for the injury. Protection of the rights of all parties to the litigation in a matter such as this where good faith is necessary and prejudice may be engendered if questions are not carefully safeguarded is within the exercise of a wise discretion on the part of the trial court.

The object of an examination of a juror on his voir dire is to ascertain whether he has the statutory qualifications of a juror, and, having the statutory qualifications, whether

there are grounds for a challenge for either actual or implied bias and to enable the party to exercise intelligently his peremptory challenges. *State* v. *Morgan*, 23 Utah 212, 64 P. 356; *Pavilonis* v. *Valentine*, 120 Ohio St. 154, 165 N. E. 730. We hold, therefore, following the great weight of authority and the better reasoning, that counsel for plaintiff is entitled to learn whether any juror is interested in or connected with any insurance or casualty company that may be interested in the case as insurer of defendant's liability. Clearly one interested in such an insurance company as stockholder or employee would be subject to challenge. The examination must be in good faith and precaution taken to ask the questions in such manner as will not convey the impression that the defendant is in fact insured. It would be misconduct on the part of counsel for plaintiff in such actions to so frame his questions that they go beyond what is reasonably necessary to serve the legitimate purpose of eliciting the fact he is entitled to adduce in order to secure a jury free from bias and prejudice. *Daniel* v. *Asbill*, 97 Cal. App. 731, 276 P. 149. The Supreme Court of Michigan in *Harker* v. *Bushouse*, 254 Mich. 187, 236 N. W. 222, 224, has suggested a method of conducting the examination of jurors relative to the matter of insurance which we approve as sufficient and proper to give plaintiff the information to which he is entitled and at the same time protect defendant from prejudice. Such a method of examination might well be followed by counsel seeking to elicit such information, or by the trial judge. It is there said:

"We also might suggest to the trial judges who so frequently examine the jury on the voir dire that they might make a brief statement calling attention to the fact that some automobile drivers do, and others do not, carry insurance; that under no circumstances should it make any difference whatever as to the outcome of the case whether such insurance is carried or not; that the judge asks the question about to be put in every negligence case, and that he does not know, nor does the asking of the question signify, whether defendant carried insurance; that the law does not permit any further reference to be made to the subject during the trial of the case, but

that the plaintiff has a right to know whether any of the members of the jury are officers, employees, or stockholders in any insurance company or members of any mutual insurance company. If, after asking the question, the answer is in the affirmative, further questions may follow and challenges made, if desired. If it is in the negative, the question is disposed of with finality. Such an action on the part of the trial judges should result in the further exclusion of all reference to insurance under penalty of a reversal of the case, should counsel persist in again purposely referring to it. We do not believe that there was any error in permitting the question as propounded in the present case, though it might have led to difficulty if further referred to. As a rule, there is no necessity of naming an insurance company."

We think no error was committed by the trial court in refusing to direct a mistrial and discharge the venire so far as the refusal is based on the objection that the question propounded to the juror was improper or that the jurors might have heard counsel say he intended to ask each juror if he was connected with or interested in Intermountain Lloyds. The question asked, however, was not in the precise form we have indicated as proper, but it was clearly a preliminary question, and, if the answer had been permitted and had been in the negative, the inquiry was ended, while if in the affirmative it might have extended farther to determine what, if any, connection with or interest in such corporation the juror might have had. At the time the question was asked there was nothing in the record to show that Intermountain Lloyds was interested, but, in the absence of the jury, testimony was taken which conclusively showed that Intermountain Lloyds was a party in interest defending the case and liable up to $5,000 on any judgment which plaintiff might recover. This information was properly obtained in the absence of the jury. *Morton* v. *Holscher* (S. D.) 243 N. W. 89. The company was a local one, and it was entirely possible that some of the jurors might have been interested or connected either as a stockholder or an agent, or debtor or creditor of this company. The plaintiff was entitled to learn whether such relationship existed.

That leaves the further question whether the remark made by counsel for plaintiff to the court that "It (Intermountain Lloyds) was the party in interest, that is the test," was itself improper or indicated such misconduct of counsel as to require a reversal of the judgment. There is authority for the conclusion that it is misconduct for counsel to make such a remark and that it would be ground for reversal in the event it was manifest that the jury was influenced by such statement. *Daniel* v. *Asbill*, supra; cases cited in 56 A. L. R. 1486, and 74 A. L. R. 870. Whether the making of such remark is such misconduct as requires a reversal depends upon the facts and circumstances of the case, and particularly upon whether it was made in good faith, or willfully made for the purpose of injecting the subject of defendant's indemnity to prejudice the jury. It is apparent from the record that this statement was made, not to the jury but to the court, in response to the remark of the trial judge that the insurance company was not a party defendant. Counsel was insistent that he had a right to interrogate the jurors on the subject and the remark was a natural one for the counsel to make in response to the observation by the court. The remark was either not heard or its significance not appreciated by counsel for defendant, because they made no objection at the time, but merely suggested to the court that any further argument be made in the absence of the jury. The jury was then excused. The court had already admonished the jury to disregard the reference to the company mentioned. All other discussions and taking of testimony on the subject of insurance was in the absence of the jury, and there were no attempts during the remainder of the trial to bring to the attention of the jury the fact of defendant's insurance. There is nothing to indicate bad faith on the part of counsel or to show a willful, persistent, or diligent course or effort to impress upon the jury the fact that defendant's liability was insured. We are satisfied the jury's verdict was not prejudiced by such remark. The amount of the verdict

is not excessive, in view of the extent and nature of the injuries sustained by plaintiff, nor does the evidence disclose a question on merits so close as to justify the inference that the verdict for plaintiff would not have been rendered but for the information thus inferred that defendant was insured. *Daniel* v. *Asbill,* supra; *Raines* v. *Wilson,* 213 Iowa 1251, 239 N. W. 36. The incident was closed by counsel making his record in the absence of the jury. At the close of the evidence, and in the absence of the jury, the court called the attention of counsel for defendant to the question of insurance, and expressed a willingness to again admonish, or instruct the jury that they were to entirely disregard such statements made by counsel for plaintiff, but counsel for defendant chose not to make such a request, and no further instruction on the subject was given. In view of all the circumstances and the action of the court in admonishing the jury, no error was committed in refusing to declare a mistrial.

The next point argued, raised by several assignments of error, goes to the question of whether certain remarks alleged to have been made by Theros Pass, the driver of the Ford coupe, shortly after the accident were properly excluded. It is claimed by defendant the evidence was admissible as part of the res gestae.

Theros Pass was asked the following question on cross-examination: "Didn't you make the statement shortly after the accident 'I saw where we were going to hit so I pulled my car over to the right to keep from hitting the other car' or words to that effect." To this question objection was made that, "if it is for the purpose of impeachment the time and place and the person to whom made should be asked so that he can fix the occasion." The objection was sustained, and defendant excepted. No claim was then made, so far as shown by the record, that this testimony was offered as part of the res gestae, nor was any effort made to meet the objection by laying a proper foundation for impeachment. The evidence does not suffi-

ciently disclose the time, place, and circumstances when the words were alleged to have been spoken to enable us to determine whether the statement was admissible as a part of the res gestae. In the question it is said the statement was made "shortly after" the accident, but this does not sufficiently designate the time. "Shortly after" might imply a few seconds or several minutes or several hours or even days after the accident. The place where and circumstances under which the remark is claimed to have been made are not indicated. The objection as made was properly sustained.

In defendant's car with defendant were Mrs. Annie A. Smith, Mrs. Arlene Johnson, and Mrs. Evelyn Crittenden. It is made to appear that immediately following the collision the defendant drove his car off the road, and he and the other occupants returned to the scene of the accident where the Ford coupe was still lying in the road overturned. Theros Pass and others lifted the Ford coupe from the plaintiff, and she was carried to another car, and a few minutes thereafter taken to the hospital. Theros Pass accompanied her to the hospital at Ogden. Mrs. Smith, Mrs. Johnson, and Mrs. Crittenden each testified that upon reaching the scene of the accident they heard one of the boys make a statement. The defendant Smith said a statement was made by Theros Pass in response to his question, "What was the matter, what did you run into me for?" Plaintiff objected to defendant stating what Theros Pass had said on the ground that no foundation for impeachment had been laid. Defendant's counsel stated the declaration was offered as part of the res gestae. The objection was sustained. Later, and in the absence of the jury, the record on this subject was completed by defendant offering to prove as follows:

"Mr. Stewart: Now we offer to show by the testimony of Mr. Smith, the defendant, and by the testimony of his daughter, Mrs. Crittenden, and by the testimony of Mrs. Johnson that at the time of the accident, when they got out of the automobile and went to the Ford coupe which was overturned, they had a conversation with

Theros Pass, the driver of the Ford, in which he in substance and effect said this: 'It was all my fault; the lights blinded me so that I couldn't see and I thought I was farther over on the road' or that he thought that he was on the right hand side of the road, or words to that effect in substance.

"Mr. Hanson: We resist the offer for the following reasons, it would be incompetent and hearsay as it stands, and there was no foundation or offer of impeachment of Theros Pass made on any such ground: he was not asked if he made that statement to any person or anything like that upon which impeachment could be based.

"The objection was sustained and defendant excepted."

The question propounded to Mrs. Johnson and Mrs. Smith failed to disclose sufficient facts from which the court could conclude that the declaration sought to be adduced was part of the res gastae, and it is not clear whether the statement was made by Theros Pass or one of his brothers. The objections to the questions propounded to these witnesses were properly sustained. A different conclusion must be reached with respect to the testimony of the defendant and Mrs. Crittenden. The defendant testified that he, immediately after the accident, drove his car off the road, returned to the scene of the accident, and first came up to Theros Pass, the driver of the Ford coupe, and said, "What was the matter, what did you run into me for?" Mrs. Crittenden testified she talked with the driver of the Ford coupe immediately after she reached the scene of the accident, and all the persons concerned in the accident were present, that the plaintiff had not yet been removed to the hospital nor had the wrecked car been removed off the road. We think sufficient is shown to indicate that the statement alleged to have been made by Theros Pass and offered to be proved was properly a part of the res gestae under the rule announced by this court in *Jackson* v. *Utah Rapid Transit Co.*, 77 Utah 21, 290 P. 970, 976. It is there stated that the general limitations of the res gestae rule are "that the declaration or utterance must be spontaneous or instinctive; that it must relate to or be connected with the main or principal event or transaction itself material and admissible in

evidence; and that it must have been the result or product, the outgrowth, of the immediate and present influences of the main event, or preceding circumstances to which it relates, and must be contemporaneous with it and tend to explain or elucidate it. * * * That the word 'contemporaneous' is not taken literally, and that time is not the real governing factor in the determination, but is an important element in determining whether the statement was spontaneous and immediately connected with the main transaction and prompted or produced by its immediate and present influences." The declaration offered meets the requirements of this rule, and should have been admitted. It was made within a very few minutes after the collision and before any of the parties concerned had left the scene of the accident, so as to be contemporaneous within the rule announced in the Jackson Case. It was closely connected with and related to the accident, and tended to explain and elucidate it. It was made under circumstances which indicate its spontaneous character and to preclude premeditation or design or opportunity for reflection, and is sufficiently shown to have been the result of the immediate and present influences of the collision. The nature of the occasion was such as to cause shock and excitement, and to render utterances within a few minutes by those concerned in the accident as spontaneous and unreflecting. The declaration, though subsequent by a few minutes, was yet near enough in time to allow the assumption that the exciting influence continued. It was therefore sufficiently close in time. 3 Wigmore on Evidence (2d Ed.) 757. The utterance related to the circumstances of the occurrence preceding it. 3 Wigmore on Evidence 744 and 757; 22 C. J. 462. The declaration was admissible, not so much as bearing on the negligence, if any, of the declarant, but for whatever value it may have bearing on the question of negligence, or lack of negligence, of the defendant. We think the court committed erreor in refusing to permit testimony of the declarations of Theros Pass as offered to be proved by the defendant. While the

trial court has a wide discretion in the admission of declarations of this character, and should be fully satisfied by evidence that a statement claimed to be res gestae comes within the rule and meets all the requirements thereof, yet where, as here, it is apparent the declaration does meet all the requirements and should have been admitted, it becomes our duty to so declare and to reverse the judgment so that on a new trial the jury may have the benefit of such testimony.

Error is assigned to the giving of instruction No. 11 withdrawing from the jury the question of plaintiff's negligence with respect to the insufficiency of the headlights on the Ford coupe. Defendant alleged that plaintiff was negligent in riding in the Ford coupe with headlights which failed to meet the requirements of the law. It is not claimed that the car had no lights. The two headlights on the Ford coupe were lighted and cast rays of light ahead of the car. Defendant testified they were not bright and would cast a ray of light about 25 feet ahead of the car. Defendant also testified that he saw the Ford coupe as it turned a curve more than 300 feet away, and that the lights did not at all interfere with him in the driving of his car. Plaintiff's witnesses testified that the lights were sufficient to comply with the law; that they lighted up the roadway for approximately 200 feet in advance of the car and disclosed the yellow line which indicated the center line of the highway; that they saw defendant's car; and that the lights on the Star car were bright and were seen by them more than 300 feet away. Whether the lights on the Ford car strictly complied with the statute or not, they were not so defective as to have been a proximate or contributing cause to the accident. The question was properly withdrawn from the jury.

A number of errors are assigned to the giving of certain instructions and the refusal to give others requested by the defendant. These have to do with the proposition of

whether or not the negligence if any, of the driver of the Ford car is imputable to the plaintiff. The rule is well settled in this state that the negligence of the driver of a car is not imputable to a guest or invitee who is not jointly responsible for the operation of the car. *Jackson* v. *Utah Rapid Transit Co.*, supra; *Maybee* v. *Maybee* (Utah) 11 P. (2d) 973; *Haarstrich* v. *Oregon S. L. R. Co.*, 70 Utah 552, 262 P. 100. On the record it is clear that plaintiff was a guest or invitee. There is no showing that she and the driver were engaged in a joint or common enterprise or that she controlled, or exercised any control, over the operation of the car, or had any right so to do, or that she consented to or acquiesced in any management or neglect in the operation of it. One in the status of a guest or invitee may, notwithstanding the negligence, if any, of the driver, be not imputed to him, himself be guilty of negligence in failing to exercise ordinary care for his own safety. A guest is required to exercise the same care for his own safety that a reasonable and prudent person would exercise under the same circumstances. Where one rides with an intoxicated driver, or one who has defective eyesight, or one who drives at an excessive or unlawful rate of speed, and the guest, with knowledge of such condition of the driver or such negligent or unlawful acts without objection, continues to ride in such automobile, and an accident happens which is caused or contributed to by such negligence, cannot recover. *Maybee* v. *Maybee,* supra. There was here no evidence that the driver of the Ford coupe had been driving in a reckless or negligent manner or at an excessive or unlawful rate of speed or in such manner as to impose on plaintiff a duty to object or warn the driver or to discontinue to ride with him. If a guest sees or discovers the danger in time to warn the operator of the car or the danger is so obvious, or he is in such position that he must have seen it in the exercise of due care, and an accident happens because of his failure to warn the operator of such danger, he may be guilty of negligence which will prevent a recovery. *Jack-*

*son* v. *Utah Rapid Transit Co.*, supra. There is not anything in the record before us to justify the conclusion that the plaintiff was guilty of negligence in failing to warn the operator of any danger which she knew or was so obvious to her that she was under the duty to protest or warn him.

The instructions as given adequately stated the rule that plaintiff could not recover unless defendant was guilty of negligence in one or more of the particulars alleged which proximately caused the accident and not then, unless she herself was free from negligence contributory ▬▬▬ thereto. The question of whether plaintiff was guilty of negligence which proximately contributed to the accident by riding in a one-seated Ford coupe with four others, including the driver, was properly submitted to the jury.

No reference is made in any of the requested instructions to the plaintiff's age and the degree of care required of a minor fourteen years of age. The degree of care required of her is not such as is required of an adult person, but must be determined by a consideration of the care ▬▬ that an ordinary child of her age, intelligence, and experience would be expected to use. *Kyne* v. *Southern Pac. Co.,* 41 Utah 368, 126 P. 311; *Montague* v. *Salt Lake & U. R. Co.*, 52 Utah 368, 174 P. 871.

Error is assigned to the giving of an instruction to the effect that the speed at which one may drive and not be guilty of negligence depends on surrounding conditions at the time, having regard to the width, grade, and condition of the street, nature of the street and nature of ▬▬▬ the traffic, and the time at which the driving is attempted. It is contended that the only negligence in this respect alleged in the complaint is that defendant drove at a rate of speed in excess of 30 miles an hour. The allegations of the complaint are sufficiently broad to justify the instruction as given, which instruction correctly states the law. *Snabel* v. *Barber*, 137 Or. 88, 300 P. 331.

Error is assigned to the refusal of the trial court to permit the jury to see and examine a 1923 model T Ford coupe

claimed to be of the same type and dimensions as that in which plaintiff was riding at the time of the accident and to view the Ford coupe with the same five per- 30, 31 sons seated therein as they were seated at the time of the accident. The identical car involved in the accident has been dismantled and disposed of, and was therefore not available. About fifteen months had elapsed between the time of the accident and the day of the trial, and of course the boys and girls who had ridden in the Ford coupe had increased in weight and size in the meantime. The permitting of a view by the jury of articles or property involved in litigation or of the making of experiments of the kind proposed outside of the court is a matter so largely in the discretion of the trial court that its decision will not be disturbed except for palpable abuse. *Konold* v. *Rio Grande Western Ry. Co.*, 21 Utah 379, 60 P. 1021, 81 Am. St. Rep. 693; 22 C. J. 767-790; 3 Jones on Evidence (2d Ed.) 401-410. There was no abuse of discretion on the part of the trial court in refusing to permit a view of the car or a demonstration of the car and its occupancy by the five persons.

Errors are assigned to the failure of the trial court to grant a motion for nonsuit, motion for directed verdict, all on the grounds of the insufficiency of the evidence to support the verdict. It is only necessary to say that, if the jurors believed the testimony of the plaintiff's witnesses, as they undoubtedly did and had a right to do, the evidence is sufficient to support the verdict. On a new trial the evidence may or may not be the same as on this record.

The judgment of the district court of Weber county is reversed and set aside and a new trial granted, appellant to recover costs.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.