STATE v. RASMUSSEN.

No. 5794. Decided May 20, 1937. (68 P. (2d) 176.)

Rehearing Denied June 22, 1937.

---

[1]*Balle* v. *Smith*, 81 Utah 179, 17 P. (2d) 224.

*Roy F. Tygesen,* of Salt Lake City, for appellant.

*Joseph Chez,* Atty. Gen., and *Zelph S. Calder,* Deputy Atty. Gen., for the State.

MOFFAT, Justice.

This is an appeal from a conviction in which the defendant, Robert Rasmussen, was found guilty by a jury of involuntary manslaughter arising out of an automobile accident. On the 5th day of June, 1935, Keith Maloney, Richard White, and Warren Pickle were driving south of Salt Lake City on Main street in an automobile and had reached a point designated as approximately 2922 South Main Street. At this point they discovered the automobile had a flat tire and they pulled off to the west side of the road to repair the same. While White and Pickle were in the act of repairing the tire on the roadway beside the automobile, it is claimed on behalf of the State that Robert Rasmussen, the defendant and appellant, driving a Ford roadster, struck the two boys. One of the boys was thrown 20 to 30 feet and the other about 90 feet, and both were killed. It is further claimed

on behalf of the State, and there is evidence to show that before Rasmussen reached the parked car where the two boys were killed he "cut in" on a car driven by one Morris. Morris testified that he attempted to follow the car but lost track of it and then reported the matter to the sheriff's office. It is also shown and admitted that about the time of the accident the defendant drove down Main street and passed the point where the accident occurred. It is then shown that defendant went home, told his sister he would not be home that night, and started back towards Salt Lake City. As he left Murray, he was arrested by a deputy sheriff who was searching for the car that had been described by Morris.

It is not necessary to discuss all of the evidence introduced in this case. The first witness on behalf of the State was Keith Maloney, who testified that Richard White and Warren Pickle were with him and he had known them all his life. Maloney testified that about the hour of 10 or 10:15 p. m., Warren Pickle and Richard White were some 2 feet east of the car while the witness Maloney was at the rear of the parked car attempting to replace a tire on the spare tire rack. He testified that he heard a crash, turned and saw that the two boys who were pumping up the tire were not there, and that by reason of an impact, which he believed to have been caused by the body of Warren Pickle, the parked car was knocked off the jack and rolled about 4 feet. He testified that he ran around the car and to the body of Warren Pickle which was about 20 feet in front of the parked car and found that Warren was dead, and then he ran to the body of Richard White some 92 feet from the parked car, and made an effort to revive him. Failing in this, he remained there until some people assembled. The two boys were then taken to the hospital. They were both found to be dead.

The appellant makes three assignments of error. Assignment No. 1 is to the effect "that there was not sufficient evidence to support, sustain or justify the verdict in this,

that there was not a single witness who appeared for the State to testify that they saw the car driven by the defendant strike the deceased, and the circumstantial evidence was not so connected as to justify a conviction"; the second, "that the court erred in refusing to admit evidence produced by the defendant and appellant as to statements made by one who was present at the scene immediately after the accident and what that witness did as a result of his conversation with the party who was a witness and present at the scene of the accident." This assignment relates to an alleged conversation between Keith Maloney and John W. Zackerson, and will be referred to later. The third assignment is to the effect, "that the court erred in its failure to give to the jury and to instruct the jury as to defendant's requested instructions Nos. 3 and 4."

Not much need be said about the first assignment of error. Aside from the evidence of other witnesses, the defendant himself admitted being at the scene of the accident about the time it occurred; that he saw a man standing at the rear of the parked car by the side of the road and that he felt some impact as he passed the car, and in his own language, "I had a subconscious feeling I had hit something." The evidence is not very clear as to the elements required to be proved in establishing a charge of involuntary manslaughter growing out of unlawful acts, especially as to those relating to lawful acts, especially as to those relating to lawful acts done in an unlawful manner and without due caution and circumspection. There was sufficient evidence to take the case to the jury.

Assignment No. 2, however, presents a more serious situation. The evidence shows without conflict that Maloney was the owner of the parked car and that the two boys who were killed were companions with him and were at work repairing the tire; that according to his testimony, he was standing back of the car some 4 or 5 feet from where the two boys were hit. He heard the crash, turned and saw the boys were gone and ran to the bodies.

It is then shown that a witness by the name of Zackerson testified that he came along immediately afterwards and claimed he was the first person to reach the scene of the accident; that at the time he arrived, two cars were parked on the east side of the road; that he ran to where Maloney was, by the body of White, and asked him how it happened, and Maloney told him that a large refrigerator truck had struck the two boys. After waiting a few minutes at the scene of the accident, Mr. Zackerson got in his car and proceeded in search of the large refrigerator truck as the result of his conversation with Maloney. After further testifying that Maloney was apparently nervous and excited, Mr. Zackerson was asked the question, "Did you ask that boy (referring to Maloney) what caused the accident?" This question was objected to and the objection was by the trial court sustained. The answer to the question must have been either yes or no, and the court should have permitted it to be answered. Counsel for defendant then offered to "prove by the witness John W. Zackerson that he spoke to a person, presumably Keith Maloney, immediately following the accident, and that Maloney was still very nervous and excited, and Maloney stated to him at that time that the two boys were killed by a large refrigerator truck." The court refused to permit the witness to testify pursuant to the offer. Counsel for defendant maintained that the statement made by Maloney in response to the question of Mr. Zackerson came within the res gestae rule and should have been permitted.

Had it been shown that the utterances offered to be proved were spontaneous, made under stress or the excitement of the occurrence, the proffered proof might have presented a different question. Nothing appears as to how soon after the alleged accident occurred the statements were made. The declaration offered may have been made within a very few minutes after the accident or so closely contemporaneous with it as to come within the rule laid down by this court in the case of *Balle* v. *Smith*, 81 Utah 179, 17 P. (2d) 224,

at page 232 of the Pacific Reporter. It must be recognized that the trial court has some discretion in the admission of declarations of this character when the declarations are not immediate, spontaneous, or made under stress of excitement. The court should be fully satisfied by the evidence that a statement claimed to be res gestae comes within the rule and meets all the requirements. It is not clearly apparent in the instant case that the declaration made meets the requirements of the case of *Balle* v. *Smith,* supra. We quote:

"The question propounded to Mrs. Johnson and Mrs. Smith failed to disclose sufficient facts from which the court could conclude that the declaration sought to be adduced was part of the res gestae, and it is not clear whether the statement was made by Theros Pass or one of his brothers. The objections to the questions propounded to these witnesses were properly sustained. A different conclusion must be reached with respect to the testimony of the defendant and Mrs. Crittenden. The defendant testified that he, immediately after the accident, drove his car off the road, returned to the scene of the accident, and first came up to Theros Pass, the driver of the Ford coupe, and said, 'what was the matter, what did you run into me for?' Mrs. Crittenden testified she talked with the driver of the Ford coupe immediately after she reached the scene of the accident, and all the persons concerned in the accident were present, that the plaintiff had not yet been removed to the hospital nor had the wrecked car been removed off the road. We think sufficient is shown to indicate that the statement alleged to have been made by Theros Pass and offered to be proved was properly a part of the res gestae under the rule announced by this court in *Jackson* v. *Utah Rapid Transit Co.,* 77 Utah 21, 290 P. 970, 976. It is there stated that the general limitations of the res gestae rule are 'that the declaration or utterance must be spontaneous or instinctive; that it must relate to or be connected with the main or principal event or transaction itself material and admissible in evidence; and that it must have been the result or product, the outgrowth, of the immediate and present influences of the main event, or preceding circumstances to which it relates, and must be contemporaneous with it and tend to explain or elucidate it. * * * That the word "contemporaneous" is not taken literally, and that time is not the real governing factor in the determination, but is an important element in determining whether the statement was spontaneous and immediately connected with the main transaction and prompted or produced by its im-

mediate and present influences.' The declaration offered meets the requirements of this rule, and should have been admitted. It was made within a very few minutes after the collision and before any of the parties concerned had left the scene of the accident, so as to be contemporaneous within the rule announced in the Jackson Case. It was closely connected with and related to the accident, and tended to explain and elucidate it. It was made under circumstances which indicate its spontaneous character and to preclude premeditation or design or opportunity for reflection and is sufficiently shown to have been the result of the immediate and present influences of the collision. The nature of the occasion was such as to cause shock and excitement, and to render utterances within a few minutes by those concerned in the accident as spontaneous and unreflecting. The declaration, though subsequent by a few minutes, was yet near enough in time to allow the assumption that the exciting influence continued. It was therefore sufficiently close in time. 3 Wigmore on Evidence (2d Ed.) 757. The utterance related to the circumstances of the occurrence preceding it. 3 Wigmore on Evidence 744 and 757; 22 C. J. 462. The declaration was admissible, not so much as bearing on the negligence, if any, of the declarant, but for whatever value it may have bearing on the question of negligence, or lack of neglignce, of the defendant. We think the court committed error in refusing to permit testimony of the declarations of Theros Pass as offered to be proved by the defendant. While the trial court has a wide discretion in the admission of declarations of this character, and should be fully satisfied by evidence that a statement claimed to be res restae comes within the rule and meets all the requirements thereof, yet where, as here, it is apparent the declaration does meet all the requirements and should have been admitted, it becomes our duty to so declare and to reverse the judgment so that on a new trial the jury may have the benefit of such testimony."

The statement made by Maloney could have been introduced by the defendant as tending to establish a defense, or brought out on cross-examination. Counsel for defendant neglected an opportunity, if he were advised as to the matter, in not asking Maloney on cross-examination whether or not he had made such a statement. If ▪ counsel at that time was aware of the fact that such statement had been made by Maloney, he could have asked him. Had he denied making the statement, the evidence tendered as to Zackerson's statement could have been pre-

sented as impeachment. We think, however, that under the rule laid down in the case of *Balle* v. *Smith,* supra, the tendered evidence was not within the rule and the refusal to permit the witness to so testify was not prejudicial error entitling appellant to a new trial.

In order to understand the basis of assignment No. 3, to the effect that the court erred in failing to instruct the jury as requested by defendant, it is necessary to make reference to the allegations in the information and the instructions given by the court. The information, after alleging in general terms the driving and operating of a motor vehicle carelessly and heedlessly with willful and wanton disregard of the rights and safety of others, and without due caution and circumspection, proceeds to charge the following particulars:

"That the said Robert Rasmussen, at said time was operating an automobile upon a public highway, to-wit; On South Main Street in Salt Lake County, State of Utah, in a southerly direction near to and approaching a point on said highway at or about 2922 South Main Street.

"That at said time and place one Richard White was lawfully on the gravel about four feet west of the paved portion of said highway. That it thereby became and was the duty of the said Robert Rasmussen to have said automobile under safe, proper and immediate control, and to keep and maintain a proper lookout to discover whether the course that said automobile was then and there pursuing was obstructed or about to be obstructed, and to use due and proper caution and circumspection in the management and control of said automobile so as to avoid colliding with or running into any persons near to said highway, and to refrain from driving his said automobile at a speed greater than was reasonable and prudent under the circumstances, having due regard to the traffic, surface, and width of said highway and visibility.

"That it further became and was the duty of the said Robert Rasmussen to sound a warning of his approach to Richard White who was near to said highway as aforesaid; and to keep and drive said automobile upon the paved portion of said highway; and to refrain from driving his said automobile while under the influence of intoxicating liquor.

"That the said Robert Rasmussen, disregarding his duty as aforesaid, and without due caution and circumspection, did negligently, carelessly, wantonly, and unlawfully, at said time and place aforesaid, drive said automobile southerly along said South Main Street in a manner which was not careful and prudent, and which did endanger the life and limb of the said Richard White, in that he, the said Robert Rasmussen, did drive said automobile at said time and place at a high and dangerous rate of speed, to-wit: Forty miles per hour; and did then and there drive said automobile without observing the course that said automobile was then and there taking to see if said course was obstructed or about to be obstructed by any person then and there being near to said highway; that the said Robert Rasmussen failed to give a warning of his approach to said Richard White; and the said Robert Rasmussen did drive said automobile off of and to the west of the paved portion of said highway; and the said Robert Rasmussen, at said time and place, did drive and operate said automobile while under the influence of intoxicating liquor; and that the said Robert Rasmussen in consequence of driving his said automobile in said negligent, careless, heedless, reckless, wanton, wilful, and unlawful manner as aforesaid upon and along said highway, did drive and propel said automobile into and against the body and person of said Richard White with great force and violence; and thereby and thus inflicted upon the body and person of said Richard White divers mortal fractures, bruises, and wounds from which he languished a short time, and then on the 5th day of June, A. D. 1935, at the County of Salt Lake, State of Utah, did die; and so the said Robert Rasmussen, in the manner and form aforesaid, while in the commission of said unlawful acts, not amounting to a felony, without due caution and circumspection, carelessly, wantonly, and unlawfully, in the manner and at the time and place aforesaid, but without malice, did unlawfully kill the said Richard White."

Appellant contends that the court erred in its failure to give to the jury and to instruct the jury as to defendant's requested instructions numbered 3 and 4. Counsel also contends that certain instructions given advised the jury in a general way that they must find the defendant guilty of *one or more* of the unlawful acts constituting the crime of involuntary manslaughter. We think the discussion of defendant's requested instruction No. 3 will indicate the difficulty arising out of a difficult situation.

It may be that it is not an easy matter to plead the specific acts necessary to bring an information within the terms of subsection (2) of section 103-28-5, R. S. Utah 1933, relating to involuntary manslaughter. Involuntary manslaughter, as indicated by the above subsection of the statute, consists of causing the death of a human being while in the commission of an unlawful act not amounting to a felony or in the commission of a lawful act which might produce death in an unlawful manner or without due caution and circumspection. Any single unlawful act not amounting to a felony, if properly pleaded and proved that such unlawful act brought about the death of a human being, would sufficiently meet the terms of the statute.

From what was quoted above from the information, it is apparent that some unlawful acts not amounting to a felony and some lawful acts which might produce death if the lawful acts were performed in an unlawful manner or without due caution and circumspection are set out. In a general way it is alleged: (1) That defendant failed to keep his automobile under control; (2) that he failed to keep and maintain a proper lookout; (3) that he failed to sound a warning; (4) that he drove his automobile at an unlawful rate of speed; (5) that he drove his automobile off the paved portion of the highway; (6) that he drove without due caution and circumspection having due regard to the traffic, the surface, the width of the highway, and visibility. These various unlawful acts not amounting to a felony, or lawful acts which might produce death committed in an unlawful manner may, by a generalization, be classed as negligent, either because of doing what should not be done or failing to do something required to be done, or doing something unlawful, because each, when amplified by the accompanying circumstances, might fulfill the requirements of specified negligence. They are not set out in the information as separate counts and whether it may be necessary to do so, we need not now say. The difficulty is that these acts without amplified characterization are con-

clusions. In submitting a cause so charged to the jury, and especially where the burden is placed upon the court of instructing orally, it may not be an easy task to accurately cover all of the situations presented. If the proof shows that the defendant failed to keep his car under control and the circumstances were shown that such failure with the resulting disastrous consequences caused the death, the proof might be sufficient. If it were properly pleaded and the proof sustained, the pleading that the defendant drove his car while under the influence of intoxicating liquor, as properly defined, such allegations and proof might sustain a conviction. In the instant case, we think the court in its instructions properly defined what constitutes being under the influence of intoxicating liquor, and if all the jurors united upon this ground, appellant could not complain. Such allegations and proof would be sufficient to sustain a conviction, but the thing complained about is that the instructions of the court failed to specify and limit the jury to any specific act or acts upon which they might find a verdict. The instruction particularly complained of and the language in it complained of is as follows:

"* * * before you can find the defendant guilty in this case you must find from the evidence, to your satisfaction, beyond a reasonable doubt, that *one or more of the act or acts* complained of was or were done, or omitted to be done, by the defendant in a reckless, heedless, wanton, negligent manner, and with knowledge of the fact that the probable result of the commission or omission of such act or acts might be a violent injury to another person, and you must find that the defendant was guilty of such reckless, heedless, wanton, negligent conduct in the operation and control of the automobile as to charge him with a knowledge that injury or death to another might probably result from the commission or omission *of such act or acts.*" (Italics added.)

Another instruction of the court properly defined and submitted the proposition of driving an automobile while under the influence of liquor. The instruction as to the rate of speed was to the effect that the rate of speed at the place

of the accident was limited to a maximum of 50 miles per hour. The evidence does not disclose that defendant was driving at a higher rate of speed than 40 miles per hour, yet, under the instruction given, part of the jurors might have found from the evidence that defendant was driving at a rate of speed that was unlawful having due regard to the traffic, the surface of the highway, visibility, and general conditions and circumstances existing at the time, while another juror or jurors might have found that defendant failed to maintain a proper lookout, and would not have agreed upon the question of rate of speed, or that another juror or jurors might have found that he failed to sound a warning, but would not have agreed upon the question of speed or a proper lookout; while another might have found that he was under the influence of intoxicating liquor and would not have agreed as to any other derelection; and still another might have found that he drove off the highway, with like failure to otherwise agree, and still under the instructions a verdict could have been reached without agreement among the jurors as to which of the many elements alleged in the complaint might have been the cause of the accident which resulted in the killing of a human being without malice.

The defendant requested an instruction which was aimed to cover this point. The requested instruction may not have made the situation any clearer to the jury than the instructions given by the court, yet the requested instruction was sufficient to call the court's attention to the weakness, if not actually error, in the instructions given, and sufficiently reached the situation which the defendant was entitled to have covered by an instruction to require the court to define the separate elements upon which the jury were required to unite upon their verdict. The instruction requested is as follows:

"You are instructed that before you find the defendant guilty of the crime of manslaughter you must first determine and find, to your satisfaction beyond a reasonable doubt, that the defendant com-

mitted an unlawful act while driving this automobile at the time the accident occurred.

"That is you must find that he committed one or more than one or all of the unlawful acts alleged to have been committed by him in this charge at the time the accident occurred, and you are further instructed that you must all unanimously agree that the defendant did commit one, or more, or all of the specific unlawful acts charged, at the time the accident occurred. In other words, gentlemen, you are instructed that before you can find this defendant guilty you must first determine, beyond a reasonable doubt, for instance, that the defendant drove while under the influence of liquor, or for instance, that he was driving at an excessive speed under the surrounding circumstances at the time, and this holds true with all the alleged unlawful acts in this information, and further, gentlemen, you must all be agreed that the defendant did commit each and every unlawful act on which you find him guilty, that is, if part of you should determine that he did commit one of the unlawful acts charged, and another portion of you determine that the defendant did commit a separate and different unlawful act charged, then that is not sufficient. Your decision must be an unanimous decision, by all the jury on each unlawful act that you find the defendant committed, if you do believe that he committed any unlawful act."

The court should give the jury what the law is as applied to the facts either stated or assumed. The case of *State* v. *Johnson*, 76 Utah 84, 287 P. 909, 911, which is likewise a manslaughter case, contains a discussion quite appropriate to the subject-matter here under consideration. It is there said:

"If in a civil case where several acts of negligence are charged, each constituting actionable negligence, and the evidence is insufficient as to one of such acts, but against objections nevertheless is submitted to the jury and a general verdict rendered in favor of the plaintiff, hardly any one would contend that no prejudice resulted on the ground that the evidence was sufficient to sustain the verdict on the other alleged acts. In principle, the matter in hand is not different. The jury here rendered a general verdict of guilty 'as charged in the information.' It thereby found the defendant guilty of an unlawful act not supported or justified by the evidence. Because the unlawful act related to or concerned intoxicating liquors does not call for an abridgment of the general rule that to justify a submission of a material issue to a jury there must be sufficient

evidence to support it, nor as to the prejudicial effect against whom it is submitted and a general verdict rendered in favor of his adversary having the burden of proof. The general verdict here is not severable. Letting all the issues as to all of the alleged unlawful acts to the jury gave them to understand that they could render a verdict of guilty *on any one or all of them*, which was required to be expressed only by a general verdict. Some of the jurors may have been induced to join in the verdict on one or more of the alleged acts, some on other alleged acts, but on which or on all it is impossible to tell. That none of the jury was induced to join in the verdict because of the submission of the issue as to intoxication is also impossible to tell. We cannot review a criminal action like an equity case—try it de novo on the record—and ourselves determine the guilt or innocence of the defendant, the weight to be given conflicting evidence, the credibility of the witnesses, or the weight or credit to be given the claim or testimony of the defendant. Though the evidence may amply or satisfactorily sustain the conviction, yet it is not within our province to determine the guilt of the defendant and in such case justify erroneous and adverse rulings against him nonprejudicial."

The instructions submitted to the jury in the instant case permitted such verdict as is indicated in the quotation from the case of *State* v. *Johnson,* supra. Under the rule of the Johnson Case and a number of Utah cases preceding it, so-called "shot gun" or "scatter gun" allegations and instructions have been condemned. The involuntary manslaughter statute is one of those statutes expressed in generic terms and both informations and instructions must under practically all the authorities descend into the details. This is often difficult to do without pleading the evidence or encroaching upon factual matters in the instructions.

The difficulty in the instant case is multiplied by the inclusion of several elements relating to the unlawful killing of a human being without malice, any one of which properly pleaded and proved would support a verdict. They are, stated generally: (1) Driving at a dangerous and high rate of speed, to wit, 40 miles per hour; (2) driving without a proper lookout to see whether the course was obstructed; (3) failure to give a warning of approach; (4) driving off

the paved portion of the highway; (5) driving an automobile while under the influence of intoxicating liquor. Any one of these general statements when properly amplified by pleadings and proof and when coupled with the unlawful killing of a human being without malice would be sufficient. But to tell a jury that if they find from the evidence that *"one or more of the act or acts* complained of: was done * * * in a reckless, heedless, wanton, or negligent manner," permits each juror to choose any one or more of the five separate unlawful acts not amounting to a felony or lawful acts which might produce death when committed in an unlawful manner, without due caution or circumspection, with the unlawful killing of a human being without malice, which, if the minds of the jurors could be screened, might disclose at least five separate verdicts upon five separate and distinct grounds. By a generalization it is possible to take the position that the instructions given covered the situation, or that the instruction requested did not meet the situation contended for by appellant.

The writer and Mr. Justice HANSON are of the opinion there was prejudicial error in the instructions as herein indicated. A majority of the court are of the opinion there was no prejudicial error and that the judgment should be affirmed. The judgment of the lower court is therefore affirmed.

EPHRAIM HANSON, J., concurs.

WOLFE, Justice (concurring in the result).

Very early in the consideration of this case, I expressed in writing my opinion that the judgment should be affirmed, giving my reasons therefor. Since the opinion of Mr. Justice MOFFAT contains the decision of a majority of this court, but sets out reasons for arriving at any opposite decision, I shall annex my opinion in the hope that from all opinions filed by a majority affirming the decision, the reader may be able to discover not only the decision in the case, but the principles of law and reasoning supporting it.

I agree that the lower court committed no error when it excluded the purported statement of Maloney to Zackerson to the effect that the car which struck the boys was a refrigerator truck. It should be noted that Maloney was on the stand and could have been cross-examined on this matter and if he denied saying it, impeached by Zackerson. But defendant sought to introduce his statement as part of his affirmative testimony showing some other car than that which he was driving hit the two boys. If it was res gestae, he could do this, because this exception to the hearsay rules does not require the death or unavailability of the utterer of the statement as a condition precedent to introducing it. Wigmore on Evid. (2d Ed.) § 1748, p. 741. What is and what is not res gestae is at times an extremely difficult question to determine, not only because it is difficult to determine whether the element of spontaneity is present, but because the law itself has been very much misunderstood and confused. Even the name is unfortunate because it connotes no distinctive meaning. It has further been confused with the conception of a verbal act which is necessary and competent because simply part and parcel of a whole transaction. As Wigmore points out in his treatment of this subject in sections 1745 to 1759 (Wigmore on Evid. [2d Ed.]), the so-called res gestae is in fact simply another exception to the hearsay rule, based on the fact that there are assurances sufficient to make it reliable even though there is no opportunity to cross-examine. But that assurance based on the spontaneity necessary to make it the automatic result of the excitation engendered by the occasion and to eliminate any probability that it was the product of reflection or rationalization must be present. And it is in this regard that the trial judge's judgment will prevail where it is within the range of permissible conclusion from the evidence even though other judges might also permissibly come to a different conclusion. For that reason, I do not see that we should overturn the conclusion of the lower court that in the case of the purported statement of Maloney

the element of assurance above spoken of was not sufficiently clear, even though the record in this case probably apprises us as fully as the words from the witnesses in the trial did the judge therein as to the element of automatic utterance. There seems practically no element of credibility of witness involved as to this matter.

It should be noted that since the sole basis for admitting statements of this kind depends on what we have chosen to call their "automatic" nature, the court should be fairly well convinced that such basis exists; otherwise, statements of witnesses in regard to which there may be no opportunity to cross-examine will be admitted to the great prejudice of the opposite party. The subject began in obscurity and even today continues to produce cases where it has apparently not been understood. Professor Thayer in the American Law Review, Vol. XV, No. 5, p. 81, states:

"If it be true, as it seems to be, that the phrase first came into use in Evidence near the end of the last century, one would like to know what started the use of it just then. That is matter for conjecture rather than opinion. It would seem probable that it was called into use mainly on account of its 'convenient obscurity.' * * * The law of hearsay at that time was quite unsettled; lawyers and judges seem to have caught at the term 'res gesta,'— * * * which was a foreign term, a little vague in its application, and yet in some applications of it precise,—they seem to have caught at this expression as one that gave them relief at a pinch. They could not, in the stress of business, stop to analyze minutely; this valuable phrase did for them what the limbo of the theologians did for them, what a 'catch-all' does for a busy housekeeper or an untidy one,— some things belong there, other things might for purposes of present convenience be put there. We have seen that the singular form of phrase soon began to give place to the plural; this made it considerably more convenient whatever multiplied its ambiguity, multiplied its capacity; it was a larger 'catch-all.' To be sure, this was a dangerous way of finding relief, and the judges, textwriters, and students have found themselves sadly embarassed by the growing and intolerable vagueness of the expression." See Wigmore on Evid. (2d Ed.) p. 775.

There seems to be no question today, however, but that the statements may be made by one not an actor in the occurrence and that the fact that it is in answer to a question does not necessarily prevent it from being uttered under excitation and thus the occurrence speak through the utterer as a medium. But the fact that it was in answer to a question is to be considered in determining whether it was without reflection or whether it was the result of a process of reconstruction, by narrative, however excited the narrator may be, the circumstances of the accident. In regard to the doctrine of so-called res gestae, attention is called to the valuable treatment contained in Wigmore on Evidence (2d Ed.) §§ 1745 to 1792, and to Jones' Comm. on Evidence, Vol. 3 (2d Ed.) c. 12.

In regard to the court's failure to give the defendant's requested instruction No. 3, I do not think it was error. Admitting for the occasion that the jurors must all agree on one or more specifications of what constituted the unlawful driving and that the jurors cannot combine their conclusions on the different specifications of unlawfulness so as to converge into the final conclusion of unlawful driving likely to cause death, I think, nevertheless, that the court's instruction was sufficient to cover this matter. The court told the jury that it must find that "one or more of the acts complained of was or were done or omitted to be done," etc. The evidence in this case, for a hit-and-run accident, is unusually convincing. The driver of the car that defendant cut-in on, going away over on the dirt in so doing, followed the defendant's car after it passed him. He noticed the driver of the car which cut-in on him wore a white cap. Defendant wore a white cap. No other car passed him except defendant's car before he reached the parked car. After he passed the parked car 15 or 20 feet, he saw one of the bodies lying on the shoulder of the road. He concluded defendant's car had hit that body. After hesitating for a moment, he saw that help was coming and pursued the defendant's car until he lost it. He was about

200 feet from the parked car when the defendant's car cut-in on him, and up to the time he saw the first body, he kept within from 150 to 250 feet of the defendant's car. And from the amount of dust raised, it has the appearance that defendant after his right wheels struck the shoulder of the road upon his cut-in, continued along that dirt portion for a space before he came out fully again on the pavement. The fact that he was compelled to make such a sharp cut-in and swerve so far over to the right to avoid an on-coming car, gives some indication of how he was driving. Add to that the fact that he had been drinking—and we might expect he would minimize it—and what practically amounted to a confession that he knew he had hit some one, and there appears to be a rather clear case. What may be prejudicial on a close case may not be in a case where the evidence is fairly clear. If we take a case where there is a mountain of evidence for one side and a molehill of evidence for the other side, an instruction, which in a close case would likely puzzle the jury or influence them in such case, may not be prejudicial, because, regardless of instructions, it would be very unlikely that they would decide in favor of the molehill.

Prejudice cannot be judged purely intrinsically on the claimed error, but in view of the whole case. We can hardly consider the jurors as if they were a body of highly trained lawyers, wool combing the evidence and instructions for highly technical points upon which to determine their decision. It seems to me that the ordinary jury would conceive that the instruction given by the court would require them to come to unanimity on one or more of the specifications. And we must presume they followed it and did so. All of the jurors undoubtedly concluded that the defendant drove without due circumspection and caution having due regard to the traffic. It appears to me that several of the other specifications enumerated in the information are merely other ways of saying this or more specific ways of describing the nature of the lack of due caution. Certainly, the specification that he failed to keep his automobile under

control and that he drove it at an unlawful rate of speed under all the circumstances, and the specification that he drove while under the influence of intoxicating liquor, simply state reasons for his driving without due caution and circumspection. It is the "why" of his doing so. We have said that the liquor must affect his control. We have said merely drinking liquor is not enough. It must be shown that his driving was influenced by the effects of the liquor differently than it would have been under his normal faculties and impulses. Therefore, it simply amounts to saying he failed to drive with the due caution and circumspection because the liquor influenced him to drive that way.

I am wondering how far the jury is required to go in agreement on the subsidiary facts. It must have concluded that he drove without due care and circumspection and it therefore concluded that such driving caused the death of the deceased. Must it also have come to unanimity on all of the specifications which it is alleged the lack of due caution consisted of? If one of these specifications could again be broken down into more refined and different causes, must it also have come to unanimity as to one or more of those causes? For instance, if it is alleged that a defendant drove without having his car under control because he was "spooning" with a girl and because under the influence of liquor, must there be unanimity on the causes bringing about said alleged lack of control? And, if so, it may well be argued that they all must agree that a combination of the two elements caused the failure to keep proper control, because the conjunctive was used. How far up the trunk and branches of the evidence tree must this unanimity extend?

But at all events, if there must be unanimity of agreement on one or more of the specifications named in the information, I think the instruction was sufficient to call that to the attention of the jury. I see no need of adding to the difficulties of the prosecutor and the trial court. I think in the last twenty-five years we have been over-strict

in many of our interpretations of the criminal law and procedure. It has resulted in putting the criminal procedure in a legal straight jacket.

For the reasons expressed in this opinion, I think the judgment should be affirmed.

FOLLAND, Chief Justice (concurring).

Only three alleged errors are assigned or argued. I shall state my views on each of them seriatim. (1) Alleged insufficiency of the evidence: As to this, a reading of the record discloses ample evidence to not only justify the court in submitting the case to the jury, but also to sustain a verdict of guilty. The only seriously disputed question is the identity of the person responsible for the death of the deceased. Defendant's conduct and statements alone are sufficient to support the finding that he was the one concerned in the collision which resulted in death. (2) The court did not err in rejecting the testimony of Zackerson as to what Maloney said to him. There was no such showing of spontaneity as to require a holding by the trial court that Maloney's statement was part of the res gestae. (3) On the question of instructions, the only error assigned and discussed is the refusal of the court to give defendant's requested instructions Nos. 3 and 4. The reason given for alleging error is that the jury were not instructed plainly enough that they all must agree on one or more of the acts alleged as constituting the crime. There was no point made regarding the sufficiency of the information and no exception taken or error assigned to any of the instructions as given. The requested instructions are far from models of clarity and accuracy, and, as pointed out by Mr. Justice LARSON in his opinion, were properly refused. True, the instruction given might have been more artistically worded, but no juror would be misled by it. Read in connection with the whole charge, the instruction sufficiently conveys the information that the jurors should unite in finding the exist-

ence of one or more of the acts charged before a verdict of guilty could be returned.

The record being free from error, the judgment of conviction should be affirmed.

LARSON, Justice (concurring in part, dissenting in part).

I concur in the opinion of Mr. Justice MOFFAT that the exclusion of the purported statement of Maloney to Zackerson relative to a red refrigerator truck striking the boys was not error.

Relative to the errors claimed with respect to the court's refusal to give defendant's requests Nos. 3 and 4, I think the court committed no error. Defendant's request No. 4 is contradictory and ambiguous and confusing in three particulars. First, it states that the act does not involve things done intentionally, and then says that the jury must determine whether defendant's acts were such as to indicate an intention. Second, a statement that the jury must determine whether defendant's acts were culpable acts is mingled with a statement about want of reasonable care and an accidental death. Third, it contains a declaration that if defendant acted in an ordinary, reasonable manner "he is not guilty of an unlawful act," which is clearly not a correct statement of the law. It was properly refused.

Defendant's requested instruction No. 3, refused by the court, forms the bone of contention in this action. If the substance, the meat, of a request is given in proper and clear language, complaint cannot be predicated upon the failure of the court to give the request in haec verba. Assuming therefore, that defendant's request No. 3 correctly stated the law, was the "meat" thereof covered in the instructions given by the court?

The information charges defendant with involuntary manslaughter. It is set forth that defendant in operating an automobile did three unlawful acts, as the result of one or more of which one Richard White was killed. The three unlawful acts charged are: Driving under the influence of

liquor; speeding; and reckless driving. It is conceded that if the death of Richard White resulted from any one of these unlawful acts and the state has proved that death resulted from that act, the verdict must stand. There is no way of telling how the jury arrived at its verdict, and we must assume it reached its conclusion from a consideration of the evidence viewed in the light of the court's instructions. No exceptions were taken to any of the instructions as given, and defendant cannot and does not now complain that the instructions given were erroneous. It is not the duty nor prerogative of the appellate court to search the record or the instructions to find error. Intendments and presumptions, if any, must be in favor of the judgment, and unless the defendant was deprived of some right, which, had it been granted, might have affected the verdict, it is our duty to affirm the judgment. *State* v. *Siddoway*, 61 Utah 189, 211 P. 968. Did then the refusal of the court to give defendant's request No. 3 deprive him of such right? In other words, did the instructions as given substantially cover defendant's request No. 3? That request was as follows:

"You are instructed that before you find the defendant guilty of the crime of manslaughter you must first determine and find, to your satisfaction beyond a reasonable doubt, that the defendant committed an unlawful act while driving this automobile at the time the accident occurred.

"That is you must find that he committed one or more than one or all of the unlawful acts alleged to have been committed by him in this charge at the time the accident occurred, and you are further instructed that you must all unanimously agree that the defendant did commit one, or more, or all of the specific unlawful acts charged, at the time the accident occurred. In other words, gentlemen, you are instructed that before you can find this defendant guilty you must first determine, beyond a reasonable doubt, for instance, that the defendant drove while under the influence of liquor, or for instance that he was driving at an excessive speed under the surrounding circumstances at the time, and this holds true with all the alleged unlawful acts in this information, and further, gentlemen, you must all be agreed that the defendant did commit each and every unlawful act on which you find him guilty, that is, if part of you should determine

that he did commit one of the unlawful acts charged, and another portion of you determine that the defendant did commit a separate and different unlawful act charged, then that is not sufficient, You(r) decision must be an unanimous decision, by all the jury on each unlawful act that you find the defendant committed, if you do believe that he committed any unlawful act.'

The court told the jury that reckless driving (defining it) was unlawful (instruction No. 5); that driving under the influence of liquor (defining it) was unlawful (instruction No. 5½); and that speeding (defining it) was unlawful (instruction No. 13). In instruction No. 3, the jury was told that every essential allegation constituting the crime must be proved beyond a reasonable doubt by the state; in instruction No. 6, that before they could find the defendant guilty they must find, inter alia, "at the time of the collision, said defendant was engaged in the commission of one or more unlawful act or acts specifically alleged in the information, and one or more of said unlawful act or acts, was or were the proximate cause of the death of Richard White." In instruction No. 5½, after declaring it unlawful to drive an automobile while under the influence of intoxicating liquor, the court charged that:

"You are, however, further instructed in this connection that though you should believe from the evidence beyond a reasonable doubt that the defendant, Robert Rasmussen was under the influence of intoxicating liquor at the time and place alleged in the information, still, unless you also believe from the evidence beyond a reasonable doubt that such intoxicated condition was the proximate cause of the collision with the body of said Richard White you should not find the defendant guilty because of such condition."

And in instruction No. 7, the court again emphasized that the jury must pass upon the specific act, while speaking about driving while under the influence of liquor:

"It is your duty to carefully determine from the evidence in the case with relation to that issue.   *   *   *"

And though they might believe defendant had been drinking, if it did not materially affect his driving, the jury must

find for him on that act. No complaint can be made that as to this alleged unlawful act, the instructions were not specific enough.

The court then, after defining speeding, reckless driving, ordinary care, and culpable negligence, said in instruction No. 16:

"You are instructed that the gist of the offense of involuntary manslaughter is the reckless, heedless, and wanton criminal negligence of a person doing or failing to do some act which results in the death of another; *and before you can find the defendant guilty in this case you must find from the evidence, to your satisfaction, beyond a reasonable doubt,* that one or more of the act or acts complained of was or were done, or omitted to be done, by the defendant in a reckless, heedless, wanton, negligent manner, and with knowledge of the fact that the probable result of the commission or omission of such act or acts might be a violent injury to another person, *and you must find that the defendant was guilty of such reckless, heedless, wanton, negligent conduct in the operation and control of the automobile as to charge him with a knowledge that injury or death to another might probably result from the commission or omission of such act or acts."* (Italics mine.)

The instruction goes farther than defendant's request, because, as indicated by the italicized part, before the jury could find him guilty at all, they must find him guilty of reckless driving. That certainly leaves nothing to speculation or conjecture as to whether they were told there must be a unity on the act of reckless driving.

The jury were thus instructed that unless they were agreed that defendant was driving while under the influence of liquor, they must disregard that charge and they could not find against defendant on that ground. They were then told that they must find for defendant as to reckless driving unless they were agreed that he was guilty of that act. Now, if the jury agreed that defendant was guilty of either one of these unlawful acts, and that such act was the proximate cause of the death of Richard White, the verdict must stand. If the jury were not agreed on one or the other of these acts, then we must conclude that the jurors followed the instruc-

tions of the court and did not find against defendant on either of them. In that event, they must have agreed that he was guilty of speeding. To say that the jury may not have come to a unanimity on the act or acts of which defendant was guilty, is to say that the jurors utterly disregarded the instructions of the court. I do not believe that a court should presume that a jury did wrong; that they misconstrued the court's instructions; or that of two courses of action, the jury would choose the path of error.

It appears, therefore, that the court in the instructions given covered and called to the attention of the jury the matters defendant sought to reach in his request No. 3, and no prejudice resulted from the refusal to give the instruction requested.